## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GRAHAM B.C. ROMAN,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:25-786** |
| **v.** | : | **(JUDGE MANNION)** |
| **DR. LAUREL HARRY,** *et al.,* | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

*Pro se* Plaintiff Graham B.C. Roman ("Roman"), a convicted and sentenced state prisoner who is proceeding *in forma pauperis*, has filed a complaint in which he seeks declaratory, injunctive, and monetary relief under 42 U.S.C. §1983 against several Commonwealth of Pennsylvania Department of Corrections ("DOC") prison officials. Roman asserts that these prison officials violated his rights under the Eighth Amendment to the United States Constitution with respect to certain conditions of his confinement at Pennsylvania State Correctional Institution Rockview ("SCI Rockview"). The Court has screened the complaint pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b) and, for the reasons stated below, will dismiss Roman's Section 1983 claims except to the extent he seeks nominal and punitive damages against some of the defendant prison officials in their individual capacities.

## I.    BACKGROUND

The Clerk of Court docketed Roman's complaint on May 5, 2025. (Doc. 1.) In the complaint, Roman names as Defendants: (1) Dr. Laurel R. Harry ("Harry"), the Secretary of the DOC; (2) Bobbi Salamon ("Salamon"), the Superintendent of SCI Rockview; (3) M. Rowe ("Rowe"), a Deputy Superintendent at SCI Rockview; (4) Hoover, a Major at SCI Rockview; (5) Sabella, a Facility Safety Manager at SCI Rockview; and (6) W. Serafini ("Serafini") and Pasquale, Unit Managers at SCI Rockview. (Doc. 1 ¶¶4–10.)

Roman alleges that while he was incarcerated on D-Block at SCI Rockview from June 18, 2024, through April 18, 2025, Defendants subjected him to conditions of confinement which violated his rights under the Eighth Amendment. (*Id.* ¶¶11–61.) Those conditions include: (1) a pigeon infestation; (2) broken tables, chairs, stairs, and window frames in common areas; (3) broken toilets; (4) broken or poor ventilation in his cell; (5) the roof leaking; (6) flooded floors in common areas; (7) excessive bird droppings in common areas; (8) extreme hot and cold temperatures in cells and common areas; and (9) overcrowding. (*Id.* ¶¶14–49.) Roman complained about these conditions either in person or through written requests to Salamon, Rowe, Hoover, Sabella, Serafini, and Pasquale; however, these Defendants repeatedly failed to fix the conditions. (*Id.* ¶¶16, 18–19, 21–22, 31–33, 40–

41.) He also submitted more than thirteen (13) grievances about these conditions, and some of those grievances, such as Roman's complaints about the pigeon infestation, were denied. (*Id.* ¶¶23, 26–27, 31, 40, 45, 56.)

Regarding these conditions, Roman avers that the pigeon infestation, which resulted in unsanitary conditions due to bird droppings as well as eggs, feathers, and parts of nests falling from the ceiling, exposed him to diseases such as psittacosis and histoplasmosis, caused him to have difficulty breathing, and caused him to have a sore throat. (*Id.* ¶¶37–39.) He also points out that he is disabled and suffers from severe mental and physical issues, such as osteogenesis imperfecta (a/k/a brittle bone disease), and risks slipping and falling due to the roof leaking and flooded floors. (*Id.* ¶46.) Moreover, the stairs are made of wood, are "rotting away," and are "a fire hazard." (*Id.* ¶49.)

Roman avers that Salamon, Rowe, Sabella, Serafini, Pasquale, and Hoover "maintain an unwritten custom of ignoring and downplaying dangerous, offensive, and poor prison conditions." (*Id.* ¶34.) He also avers that Harry and Salamon "maintain a long standing [sic] . . . unwritten custom which has allowed the prison conditions . . . at SCI Rockview to become 'deplorable' and 'sordid'" despite a 1992 court-ordered inspection report which gave "light on the same ongoing issues reoccurring [to] this very day."

- 3 -

(*Id.* ¶36.) Harry and Salmon further "knowingly fight[] to keep open SCI[]Rockview with no plan or action on maintaining the health and saftey [sic] of the inmate population" so the SCI Rockview correctional officers remain employed. (*Id.* ¶¶35, 48.)

Based on these allegations, Roman asserts Section 1983 Eighth Amendment conditions-of-confinement claims against Harry and Salamon in their official capacities and the other Defendants in their official and individual capacities (*id.* ¶¶4–10). For relief, he seeks a declaration stating that:

> [Harry and Salamon] violated [his c]onstitutional [r]ights when they maintained a procedure and custom of knowingly housing [him] and others alike in [SCI] Rockview, D-Block while knowing these dangerous prison conditions at [SCI] Rockview existed including the complete lack of adequate shelter, which has imposed such a substantial risk of serious harm, and has exposed [him] to a substantial risk of serious damage to his future health regarding the long standing pigeon infestation, leaking roof that creates a hazardous flooding of waste [sic], pigeon droppings and dirt and poor/insufficiant [sic] ventilation within in the cells/common areas daily, which as here all the prison conditions named and combined deprived [him] and others alike the minimal civilized measures of life's necessities and the use of this custom that is so widley [sic] accepted within the entire state of Pennsylvania is deliberately indifferent to [him] and others alike and they continue to violate [his] Eighth Amendment rights under the United States Constitution.

(*Id.* ¶ 62.) He also seeks compensatory damages, punitive damages, and injunctive relief in the nature of: (1) removing all inmates from D-Block and A-Block; (2) closing SCI Rockview "until there is a complete humane removal

of all animals, pigeons[,] and birds"; (3) directing the DOC to (a) hire a "third party [sic] hazardous material removal company to complete sanitize" SCI Rockview's interior, (b) "[c]ompletely replace and repair the roof," (c) "[c]ompletely fix all fixtures that are broken, cracked, decaying[,] or rotting within the building," and (d) "[c]omplete a full fire escape plan with propper [sic] exit signs, a working second exit to the outside, and sprinklers." (*Id.* ¶¶63–66.)

When he submitted his complaint, Roman neither remitted the filing fee nor sought leave to proceed *in forma pauperis*; as such, an Administrative Order issued requiring him to remit the fee or file an *in forma pauperis* application within thirty (30) days. (Doc. 4.) Roman timely complied with this Administrative Order by filing an application for leave to proceed *in forma pauperis* ("IFP Application") along with a certified prisoner trust fund account statement on May 22, 2025. (Docs. 5, 6.)

On June 17, 2025, Roman filed a motion for leave to file a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d). (Doc. 7) Attached to this motion was Roman's proposed supplement to his complaint in which he sought to add four (4) new defendants and several new causes of action under Section 1983. (*Id.* at 17.) On July 29, 2025, Roman filed a notice of change of address indicating that he was transferred

- 5 -

from SCI Rockview to Pennsylvania State Correctional Institution Smithfield ("SCI Smithfield"). (Doc. 9.)

On August 5, 2025, the Court entered an Order which, *inter alia*, granted the IFP Application, deemed withdrawn Roman's motion for leave to file a supplemental complaint due to his failure to file a supporting brief in accordance with Local Rule 7.5, provided him with thirty (30) days to file a comprehensive amended complaint, and informed Roman that the Court would presume that he intends to proceed on his original complaint if he did not timely file an amended complaint. (Doc. 10.) On August 18, 2025, Roman filed a notice of his intent to proceed on his original complaint. (Doc. 11.)

## II.    LEGAL STANDARDS

### A.    Screening of *Pro Se* Complaints Under 28 U.S.C. §§1915A, 1915(e)(2)(B)

This Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. *See id.* §1915A(b)(1). The Court has a similar screening obligation regarding actions filed by prisoners proceeding *in forma pauperis*. *See id.* §1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if

the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In screening claims under Sections 1915A(b) and 1915(e)(2)(B), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Smithson v. Koons*, No. 15-cv-1757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under §1915A(b)(1) [and] §1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), *report and recommendation adopted*, 2017 WL 3008559 (M.D. Pa. July 14, 2017). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn

from those allegations, viewed in the light most favorable to the plaintiff. *See id.*; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Section 1915A and 1915(e)(2). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of *pro se* prisoner litigation, the Court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle*, 429 U.S. at 106). This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'" *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

Additionally, when construing a *pro se* complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala*, 704 F.3d at 244. However, *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

## B.    Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show

that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III.  DISCUSSION

### A.  Section 1983 Official-Capacity Claims for Monetary Damages

Roman asserts Section 1983 official-capacity claims for monetary damages against all Defendants. (Doc. 1 ¶¶4–10, 64–65.) The Court will dismiss these claims because Defendants are not "persons" amenable to suit under Section 1983 when sued for monetary damages in their official capacities and the Eleventh Amendment bars these claims.

Roman cannot maintain his Section 1983 official-capacity claims for monetary damages against Defendants because they are not "persons" amenable to suit under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under [Section] 1983."). In addition, these claims are barred by the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity . . . against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties

> in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)).

Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the DOC, as an agency of the Commonwealth of Pennsylvania, *see* 71 P.S. §61(a) ("The executive and administrative work of this Commonwealth shall be performed by the . . . Department of Corrections . . . ."), is entitled to the Commonwealth's Eleventh Amendment immunity. *See Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (stating that "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity"); *see also Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC).

Defendants are state officials for purposes of Section 1983 because they work for the DOC. A suit for monetary damages brought against a state official in their official capacity "is not a suit against that official but rather is a suit against that official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (internal citation omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S 658, 690 n.55 (1978))). Thus, Roman's Section 1983 official-capacity claims for monetary damages against Defendants constitute claims against the Commonwealth, which is immune from such claims under the Eleventh Amendment unless an exception to this immunity applies. *See Will*, 491 U.S. at 66, 70–71.

There are three (3) narrow exceptions to Eleventh Amendment immunity, only two (2) of which are potentially applicable to Roman's Section 1983 official-capacity claims for monetary damages against Defendants.[1] Those two (2) exceptions are if the state waives its immunity or Congress

---

[1] As for the third exception, the Eleventh Amendment does not bar a "suit[] against state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001).

exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. *See Graham*, 473 U.S. at 169 ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). However, neither of these exceptions apply here because the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S. §8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Lavia*, 224 F.3d at 195 (explaining that Pennsylvania has not waived its Eleventh Amendment immunity). In addition, Congress did not intend to abrogate a state's Eleventh Amendment immunity by enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (stating that "§1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"). Accordingly, the Court will dismiss Roman's Section 1983 official-capacity claims for monetary damages against Defendants.

## B.     Requests for Injunctive Relief

Roman seeks an injunction essentially requiring Defendants to fix the complained-of conditions at SCI Rockview. *See* (Doc. 1 ¶63.) The Court will dismiss as moot his requests for injunctive relief.

As noted above, Roman is no longer incarcerated at SCI Rockview; instead, he is currently incarcerated at SCI Smithfield. (Doc. 9). "A prisoner's transfer from the prison complained of generally moots [their] claims for prospective injunctive relief." *Conway v. Rivello*, No. 24-cv-427, 2025 WL 308129, at *6 (M.D. Pa. Jan. 27, 2025) (citing *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003), *as amended* (May 29, 2003); *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993)). The exception is "when a challenged action is (1) too short in duration 'to be fully litigated prior to its cessation or expiration'; *and* (2) 'there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again.'" *Sutton*, 323 F.3d at 248 (emphasis added) (quoting *Abdul-Akbar*, 4 F.3d at 206).

In this case, all but one (1) Defendant involved in the allegedly unlawful conditions of confinement are DOC employees at SCI Rockview, and Roman's requests for injunctive relief are targeted at only SCI Rockview. (Doc. 1 ¶¶4–10.) Thus, Roman's requests for injunctive relief generally

became moot upon his transfer from SCI Rockview unless an exception applies. *See Sutton*, 323 F.3d at 248. Roman's requests for injunctive relief, however, do "not implicate the exception to mootness." *Washington v. Gilmore*, No. 21-2876, 2022 WL 1073873, at *1, 2 (3d Cir. Apr. 11, 2022) (concluding that plaintiff prisoner's requests for injunctive relief, which included "a prohibition on the use of sick call refusal cards for inmates in the Secure Residential Treatment Unit where he was housed," was mooted by his transfer to a different correctional facility and his allegations did not meet the requirements for the mootness exception). Contrary to Roman's challenged actions being short in duration, Roman claims that the conditions at issue have been ongoing since 1992. *See* (Docs. 1 ¶36; 1-1). Roman also does not include any allegations in his complaint demonstrating a reasonable likelihood that he would be subjected to the same conditions again.[2] *See Sutton*, 323 F.3d at 248. Accordingly, the Court will dismiss as moot Roman's requests for injunctive relief.

---

[2] The Court notes that the Commonwealth recently announced the closure of SCI Rockview. *See* COMMW. OF PA. DEP'T OF CORR., PENNSYLVANIA DEPARTMENT OF CORRECTIONS ANNOUNCES FINAL DECISION TO CLOSE SCI ROCKVIEW AND QUEHANNA BOOT CAMP (Sept. 19, 2025), https://www.pa.gov/agencies/cor/about-us/newsroom/newsroom/padoc-announces-final-decision-to-close-sci-rockview-and-quehann (last visited Oct. 8, 2025).

### C.   Roman's Request for Declaratory Relief

Among his requests for relief, Roman seeks a declaration that Harry and Salamon violated, and continue to violate, his constitutional rights. (Doc. 1 ¶62.) The Court will dismiss Roman's request for declaratory relief because it is improper to the extent he seeks a declaration pertaining to Harry and Salamon's past conduct and is moot to the extent that it can be construed as a request for prospective declaratory relief.

Declaratory relief is "prospective in nature," *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013), and therefore cannot be applied to seek "retrospective relief." *Bond v. DiClaudio*, No. 22-3010, 2023 WL 1990532, at *1 (3d Cir. Feb. 14, 2023) (unpublished). Because Roman seeks, at least in part, to address actions by Harry and Salamon that have already occurred, he has failed to state a plausible claim for declaratory relief. *See, e.g.*, *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (unpublished) (explaining that a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another"). In addition, like his requests for injunctive relief, Roman's transfer from SCI Rockview to SCI Smithfield moots his request for declaratory relief to the extent it can be construed as prospective in nature. *See Sutton*, 323 F.3d at 248 ("An inmate's transfer from the facility

complained of generally moots the equitable and declaratory claims."); *see also Gurdine v. Mason*, No. 23-cv-262, 2025 WL 419530, at *3 (M.D. Pa. Feb. 6, 2025) (granting summary judgment on plaintiff's claims for declaratory or injunctive relief "because those claims were rendered moot when [plaintiff] was transferred to SCI-Phoenix"), *appeal dismissed*, No. 25-1376, 2025 WL 2494700 (3d Cir. June 11, 2025).

### D. Roman's Request for Compensatory Damages Against Rowe, Sabella, Serafini, Hoover, and Pasquale in Their Individual Capacities

Although the Court has already addressed Roman's Section 1983 official-capacity claims for monetary damages against Defendants, he also seeks such relief against Rowe, Sabella, Serafini, Hoover, and Pasquale in their individual capacities. *See* (Doc. 1 ¶¶6–10, 63). However, to the extent Roman seeks to recover compensatory damages against these Defendants, he is precluded from doing so under the Prison Litigation Reform Act ("PLRA").

Under the PLRA, Roman is precluded from pursuing a federal civil action seeking damages for mental or emotional injuries without allegations showing that he also suffered a physical injury. *See* 42 U.S.C. §1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered

while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."); *see also Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003) (holding that a plaintiff filing a federal civil action seeking compensatory damages for mental or emotional injury must allege (and ultimately prove) that they suffered "a less-than-significant-but-more-than-de minimis physical injury"). Roman does not include any allegations in his complaint suggesting that he suffered a "a less-than-significant-but-more-than-de minimis physical injury" because of the allegedly unconstitutional conduct he ascribes to Rowe, Sabella, Serafini, Hoover, and Pasquale in his complaint. *See* (Doc. 1 ¶¶58–61); *Mitchell*, 318 F.3d at 536. Accordingly, the Court will dismiss Roman's request for compensatory damages under Section 1983 against Rowe, Sabella, Serafini, Hoover, and Pasquale in their individual capacities.[3]

---

[3] While Roman's failure to allege a physical injury precludes him from seeking compensatory damages, Section 1997e(e) does not preclude him from recovering nominal or punitive damages should he ultimately prevail in this case. *See Allah v. Al-Hafeez*, 226 F.3d 247, 251–52 (3d Cir. 2000) (explaining that Section 1997e(e) does not preclude a Section 1983 plaintiff from recovering nominal or punitive damages (citations omitted)); *cf. Mitchell*, 318 F.3d at 533 ("§1997e(e) does not apply to claims seeking injunctive or declaratory relief."). In addition, even though Roman does not mention nominal damages in his complaint, he does not need to do so to recover nominal damages at trial for any constitutional violations. *See Allah*, 226 F.3d at 251 ("Although Allah does not expressly seek nominal damages in his complaint, this court has held that 'it is not necessary to allege nominal

*(footnote continued on next page)*

### E.    Roman's Claims on Behalf of Other Inmates

In several parts of his complaint, Roman asserts that Defendants' conduct violated other SCI Rockview inmates' constitutional rights and caused them to suffer injuries or placed them at risk of future injuries. *See, e.g.*, (Doc. 1 ¶54 ("[A]ll the prison conditions named and combined deprived plaintiff and others alike the minimal civilized measures of life's necessities."); *id.* ¶47 (alleging that Defendants "fail[ed] to act or correct these long standing [sic] prison conditions on D-Block, and continue to leave plaintiff and others alike at risk of serious future illness, injury and disease"). He also appears to seek relief on behalf of other SCI Rockview inmates. *See, e.g.*, (*id.* ¶62 (requesting entry of declaratory judgment on behalf of "plaintiff and others alike"); *id.* ¶63 (requesting injunctive relief to fix conditions on "SCI-Rockview D & ***A-Block***," even though his factual allegations reference conduct occurring only on D-Block (emphasis added)). The Court will dismiss Roman's claims to the extent he raises claims and seeks relief on behalf of SCI Rockview inmates, because as a *pro se* litigant, he cannot raise such claims.

---

damages'" (quoting *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. 1965))). The Court expresses no opinion on whether Roman's claims, if proven, would entitle him to punitive damages.

*Pro se* plaintiffs like Roman may not proceed on behalf of others in a civil case. *See Murray on behalf of Purnell v. City of Phila.*, 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent himself or herself *pro se*, a non-attorney may not represent other parties in federal court." (citation omitted)). Instead, Roman may only plead and conduct his own case personally or by counsel in this Court. *See* 28 U.S.C. §1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *Murray on behalf of Purnell*, 901 F.3d at 170 ("Section 1654 . . . ensures that a person may conduct his or her own case *pro se* or retain counsel to do so."); *Osei-Afriyie by Ose-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))); *see also Hagan v. Rogers*, 570 F.3d 146, 158–59 (3d Cir. 2009) (explaining that "*pro se* litigants are generally not appropriate as class representatives"). Therefore, Roman's attempt to raise claims on behalf of other SCI Rockview inmates is improper, and the Court will dismiss any claims brought on behalf of other inmates from the complaint.

### F.    Leave to Amend

Before dismissing all or part of a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule that court should grant leave to amend unless doing so would be futile). Here, the Court will not grant Roman leave to amend his Section 1983 official-capacity claims for monetary damages against Defendants, his requests for injunctive and declaratory relief, his request for compensatory damages against Rowe, Sabella, Serafini, Hoover, and Pasquale in their individual capacities, and his claims on behalf of other SCI Rockview inmates because doing so would be futile.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Roman's Section 1983 Eighth Amendment claims except to the extent he seeks nominal or

punitive damages against Rowe, Sabella, Serafini, Hoover, and Pasquale in their individual capacities.[4] An appropriate Order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 14, 2025**
25-0786-01

---

[4] Because Roman asserts only Section 1983 official-capacity claims against Harry and Salamon, and the Court will dismiss all possible requests for relief for these claims, he has no remaining claims against Harry and Salamon.